UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| DOMINIC VINCENT; JOSEPH GRECO; and VINCENT GRECO<br><br>Plaintiffs,<br><br>v.<br><br>DANIEL DOLAN, *alias, individually and his official capacity as a Pawtucket Police Officer;* and CITY OF PAWTUCKET, *by and through its Finance Director Mark Stankiewicz,*<br><br>Defendants. | C.A. No. 1:24-cv-155-JJM-LDA |

# MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Court Chief Judge

This case involves an injurious altercation between Plaintiffs Dominic Vincent, Joseph Greco, and Vincent Greco ("Plaintiffs") and Defendant Daniel Dolan. Mr. Dolan was an active member of the Pawtucket Police Department. The central dispute here is whether Daniel Dolan was acting under "color of law" when he fired his revolver at Dominic's left arm in a local restaurant parking lot in West Greenwich, R.I. Plaintiffs claim that Mr. Dolan was acting in his official capacity as a Pawtucket Police Officer during the time of the incident, necessarily implicating 42 U.S.C. § 1983. However, Mr. Dolan maintains that Plaintiffs have failed to show that he was acting under "color of law."

Before the Court are two motions: Defendants' Motion to Dismiss Counts I, II, V, VI, and VIII of Plaintiffs' Complaint[1] (ECF No. 12); and Plaintiffs' Motion to Amend its Complaint. ECF No. 14. Defendants also request that the Court invoke its discretion to decline exercising supplemental jurisdiction over Plaintiffs' remaining state law claims. ECF No. 12-1 at 11.

## I.  FACTUAL BACKGROUND

On June 23, 2021, Plaintiffs were driving their vehicle to a local eatery to pick up pizza to enjoy while watching a basketball game. ECF No. 1 at 3 ¶ 10. Plaintiff Dominic Vincent owned and operated the vehicle; Plaintiff Vincent Greco was in the front passenger seat; Plaintiff Joseph Greco was in the rear passenger seat. *Id.* ¶ 11. Plaintiffs were headed southbound on Route 95 near the Town of West Greenwich when they passed a cab truck, which unbeknownst to them, was driven by Mr. Dolan. *Id.* ¶ 12. Plaintiffs allege that after pulling into the parking lot of the restaurant, Mr. Dolan sped into the lot behind them and approached their vehicle yelling at Plaintiffs. *Id.* ¶ 14. Plaintiffs—who did not know who Mr. Dolan was or why he had approached them – reversed their car and attempted to leave the parking lot. *Id.* When Plaintiffs did so, Mr. Dolan chased the vehicle, placed himself in its path and proceeded to fire a shot from his revolver into the vehicle, which struck Mr. Vincent's left arm. *Id.* ¶ 15. Plaintiffs, out of fear, left the parking lot immediately until stopping a short

---

[1] Plaintiffs first filed a ten-count Complaint against Defendants, but in their proposed Amended Complaint, they removed their Rhode Island Constitutional claims (Count II and VI) considering a finding that state constitutions do not create a private cause of action. ECF No. 14-1.

2

distance later because Mr. Vincent fell unconscious. *Id.* ¶ 16. Plaintiffs maintain that Mr. Dolan approached the vehicle again and "berate[ed]" Mr. Vincent, did not offer any first aid, and threw a "dirty sweatshirt" in his direction. *Id.* ¶ 17.

Because of the incident, Plaintiffs filed a Complaint based on these causes of action: excessive force, battery, assault, false arrest/imprisonment, intentional infliction of emotional distress, and negligent infliction of emotional distress.[2] *Id.* at 5-9.

## II.  STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must present facts that make her claim plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine plausibility, the Court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013) (citation omitted). Next, the Court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.* (citations omitted).

To state a plausible claim, a complaint need not detail factual allegations, but must recite facts sufficient at least to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" cannot

---

[2] Section 1983 claims (Counts I, V, and VIII); Common law claims (Counts III, IV, VII, IX, and X).

suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.3d 153, 159 (1st Cir. 2011) (internal quotation marks omitted) (citation omitted) ("[C]ombined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief.").

### III.  DISCUSSION

#### A.  § 1983 Claims Against Mr. Dolan

Plaintiffs allege that Mr. Dolan was acting under color of law when (1) he used excessive force against Plaintiffs, (2) violated Plaintiffs' right to freedom from unreasonable search and seizure, and (3) violated Plaintiffs' right to petition the government for redress of grievances. ECF No. 1 at 5, 6, 8. Defendants counter that Plaintiffs cannot satisfy the elements of a § 1983 claim because Mr. Dolan was outside of his jurisdiction and a statutory exception did not apply. ECF No. 12-1 at 8.

To prevail on a § 1983 claim, a plaintiff must show that more than a "common law tort was committed by a state official." *Graff v. Motta*, 695 A.2d 486, 492 (R.I. 1997) (quoting *Bell v. Brennan*, 570 F. Supp. 1116, 1118 (E.D. Pa. 1983)). No single, easily determinable factor will control whether a police officer was acting under color of law, but these factors are relevant: a police officer's garb, duty status, the officer's use of a service revolver, and the location of the incident. *Zambrana-Marreo v. Suarez-Cruz*, 172 F.3d 122, 125 (1st Cir. 1999) (quoting *Barreto-Rivera v. Medina-*

4

*Vargas*, 168 F.3d 42, 45 (1st Cir. 1999)) (insufficient evidence of color of state law even where the officer used his service revolver, displayed his identification, and spoke of being there to "keep the peace"). The First Circuit has held that determining whether a person acted under color of law turns on whether "a state actor's conduct occurs while performing an actual or apparent duty of his office, or. . . is such that the actor could not have behaved in that way but for the authority of his office." *Zambrana-Marerro*, 172 F.3d at 125 (quoting *Martinez v. Colon*, 54 F.3d 980, 986 (1st Cir. 1995)). The main focus of the color of law analysis must be on the conduct of the police officer, *Id.* (citing *Barreto-Rivera*, 168 F.3d at 47) and whether such conduct related in some meaningful way either to the officer's governmental status or to the performance of his duties," *Id.* (citing *Martinez,* 54 F.3d at 987). *See Martinez*, 54 F.3d at 986 (explaining that "whether an officer was on or off duty when the challenged incident occurred" is not dispositive). A police officer who exercises, but misuses or exceeds, his lawfully possessed authority is generally thought to be acting under color of law. *Id.* One relevant inquiry is whether the defendant has purported to act under color of state law or, in other words, has acted under "pretense of law." *Parilla-Burgos v. Hernandez-Rivera*, 108 F.3d 445, 449 (1st Cir. 1997) (quoting *Screws v. United States*, 325 U.S. 91, 111 (1945)). If an officer's "purportedly private actions are linked to events which arose out of his official status, the nexus between the two can play a role in establishing that he acted under color of state law." *Nicholson v. Baltimore Police Dep't*, No. DKC 20-3146, 2023 WL 4549741, at *3 (D. Md. Jul. 14, 2023) (quoting *Rossignol v. Voorhaar*, 316 F.3d 516,

5

524 (4th Cir. 2003)). Notably, in *Nicholson*, the fact that the defendant was off-duty and had no jurisdictional authority at the time was *not* dispositive of whether he was acting under color of law. *Id.* at *4.

Generally, the authority of the local police department is limited to their own jurisdiction. *See Page v. Staples*, 13 R.I. 306, 307 (R.I. 1881). However, two exceptions apply in Rhode Island: Rhode Island General Laws §§ 12-7-19 and 45-42-1 (the former recognizing an exception for "hot pursuit," and the latter recognizing an exception for emergency situations).

On the date of in the incident, Mr. Dolan was off-duty and outside of his jurisdictional authority while in East Greenwich, Rhode Island. ECF No. 1 at 3, ¶ 12. When Plaintiffs first passed Mr. Dolan on the highway, he was operating a "cab truck without a dump body." *Id.* Shortly after in the parking lot, he fired his "service revolver" striking Mr. Vincent's left arm without any "warning, provocation, or threat." *Id.* at 4, ¶ 15. Mr. Dolan's conduct related to the performance of his duties as a Pawtucket Police Officer, even though he was out of jurisdiction. The acts of following a vehicle, approaching a vehicle, and firing a gun are all consistent with the authority vested in police officers in particular circumstances. However, here the situation did not warrant such behavior. As a Pawtucket Police Officer, Mr. Dolan was vested with certain authority. In the context of "hot pursuit," for example, Mr. Dolan might be authorized to follow a vehicle outside of his jurisdiction. *See* R.I. Gen. Laws § 12-7-19. However, nothing in the Complaint alleges that Mr. Dolan followed the Plaintiffs in close pursuit from Pawtucket to East Greenwich.

Plaintiffs' Exhibit 1 includes Mr. Dolan's trial testimony where when asked about his impression of the Plaintiffs' vehicle when it passed his, responded that "[the Plaintiff's] driving was consistent–it appeared consistent to me with a suspect fleeing from the police." ECF No. 15-2 at 745. Mr. Dolan purported to act in his official capacity as a Pawtucket Police Officer when he followed the Plaintiffs because he thought they were a fleeing suspect, as hot pursuits are part of police duties. Even though Mr. Dolan should have notified the local police department of East Greenwich upon his concerns of the Plaintiffs' vehicle, he says in his trial testimony that "I know if I call that in, I know from my experience how that call is handled." Mr. Dolan chose to employ self-help strategies considering the availability of other methods.

Taking Plaintiff's allegations as true, it is plausible that Mr. Dolan was acting under color of law when he followed Plaintiff's vehicle to the pizza restaurant, approached the Plaintiff's vehicle, and fired his service revolver at Mr. Vincent. Mr. Dolan purported to act in his official capacity as a police officer, despite being off-duty and on his way home because but for being a police officer, he would not have engaged in pursuing a potential "fleeing suspect." Therefore, it is plausible that Mr. Dolan was acting under color of law.

### B. § 1983 Claim of Excessive Force

Count I of the Complaint alleges that Mr. Dolan used "unnecessary and excessive force" against the Plaintiffs. ECF No. 1 at 5, ¶ 22. Because we have already established that Mr. Dolan plausibly was acting under color of law, the Court must turn to whether the Complaint plausibly alleges claims of excessive force. Under the

7

Fourth Amendment, an excessive force claim requires an "objective reasonableness" standard. *State v. Querido*, 229 A.3d 410, 415 (R.I. 2020) (citing *Graham v. O'Connor*, 490 U.S. 386, 388 (R.I. 1989)).

The Plaintiffs have alleged facts that would plausibly deem Mr. Dolan's act of firing his gun objectively excessive. The Complaint alleges that (1) Mr. Dolan rushed from his vehicle and brandishing an unknown object yelled at the Plaintiff victims (ECF No. 1 at 3, ¶ 14); (2) the Plaintiffs did not know who Mr. Dolan was when he followed them into the parking lot (*Id.*); (3) without warning or provocation, Mr. Dolan chased the vehicle and put himself in its path (*Id.* at 4, ¶ 15); and (4) without warning, provocation, or threat, Mr. Dolan fired his revolver into the vehicle striking Mr. Vincent's left arm. *Id.* An objectively reasonable person would find Mr. Dolan's use of the gun to be excessive and unwarranted. Therefore, the Plaintiffs have plausibly alleged a § 1983 Claim of Excessive Force.

### C. § 1983 Claim of False Arrest and False Imprisonment

Count V of the Complaint alleges that Mr. Dolan violated the Plaintiffs' right to be free from unreasonable search and seizure, in violation of the Fourth Amendment. *Id.* at 6, ¶ 28. "The essential element [of a false arrest claim] is the restraint of another person without legal justification or without any color of legal authority." *Henshaw v. Doherty*, 881 A.2d 909, 919 (R.I. 2005) (quoting *Mailey v. Est. of DePasquale,* 94 R.I. 31, 34 (R.I. 1962)). Here, there is no indication that Mr. Dolan tried to arrest the Plaintiffs, therefore we will look to the elements of false imprisonment instead. For a false imprisonment claim, a plaintiff must show that

8

"(1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. *Moody v. McElroy*, 513 A.2d 5, 7 (R.I. 1986) (citing Restatement (Second) Torts § 35).

The Plaintiffs have plausibly alleged facts indicative of Mr. Dolan's intent to confine them. For instance, the Complaint alleges that Mr. Dolan deliberately put himself in the path of the Plaintiffs' vehicle when the Plaintiffs attempted to reverse and leave the parking lot. ECF No. 1 at 4, ¶ 15. Although the events occurred within a short time, it is plausible that the Plaintiffs felt confined when a man unknown to them placed himself as an obstacle in their path, presumably invoking fear. For this same reason, it is also plausible that the Plaintiffs did not consent to being confined, as they were merely picking up their pizza unaware of anything they had done wrong. *Id.* at 3, ¶ 10; *Id.* ¶ 14. This confinement was also not privileged, as Mr. Dolan was not conducting any sort of motor vehicle stop and did not act as an on-duty officer. *Id.* at 3, ¶ 12. The Plaintiffs have plausibly alleged each element of a false imprisonment claim and have therefore alleged a § 1983 Claim of False Imprisonment.

### D. § 1983 Claim of Denial of the Right to Petition the Government for Grievances

Count VIII of the Complaint alleges that Mr. Dolan violated the Plaintiffs' right to petition the government for redress of grievances. *Id.* at 8, ¶ 33. The Petition Clause protects the right of individuals to appeal to courts and other forums established by the government for resolution of legal disputes. *Borough of Duryea,*

9

*Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011). The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives. *Id.* at 388. Additionally, the right to petition is generally concerned with "expression directed to the government seeking redress of a grievance." *Id.*

The Complaint does not allege any facts that would support how Mr. Dolan violated the Plaintiff's right to petition the government. In fact, the Plaintiffs have been able to petition the government for the harm they suffered, as shown by their Complaint. *Id.* The Complaint merely states conclusory legal allegations. Therefore, the Plaintiffs have not plausibly alleged a § 1983 Claim of Denial of the Right to Petition the Government to Redress Grievances.

### E.  § 1983 *Monell* Claim Against the City of Pawtucket

In the Complaint, the Plaintiffs have included all Defendants (Mr. Dolan and the City of Pawtucket) in Counts I, V, and VIII. ECF No. 1 at 5, 6, 8. Specifically, the Plaintiffs maintain that the City of Pawtucket is liable as well as Mr. Dolan for related § 1983 claims.

In *Monell v. Dep't of Soc. Servs. of City of New York*, the court held that municipalities were "persons" under § 1983 and could therefore be held liable. 436 U.S. 658, 690 (1978). A viable § 1983 *Monell* claim consists of two components: (1) the municipality had an unconstitutional policy or custom; and (2) the unconstitutional policy or custom caused a violation of the plaintiff's constitutional rights. *Nicholson*, 2023 WL 4549741, at *7 (citing *Bd. of Comm'rs of Bryan Cty., v. Brown*, 520 U.S. 397, 403 (1997)). A municipality can be liable for an established

10

"policy" through a failure to train if it "reflects a 'deliberate' or 'conscious' choice" to not do so. *Id.* (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989)). The Plaintiff must point to a specific deficiency, general laxness or ineffectiveness in training as inadequate. *Id.* (citing *Spell v. McDaniel*, 824 F.2d 1380, 1390 (4th Cir. 1987)). However, the municipality will be liable only if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.* (quoting *Harris*, 489 U.S. at 390)). At the pleading stage, the Plaintiff must allege at least some "facts revealing: (1) the nature of the training; (2) that any failure to train was a deliberate or conscious choice by the municipality; and (3) that any alleged constitutional violations were actually caused by the failure to train." *Id.* (quoting *Lewis v. Simms*, AW-11-CV-2172, 2012 WL 254024, at *3 (D.Md. Jan. 26, 2012)).

The Complaint asserts that, "Defendant, City of Pawtucket, through its hiring, training, supervision, and disciplinary regime caused the unconstitutional behavior by its individual police officers during their encounter with Plaintiff victims, in violation of the First and Fourteenth Amendments of the United States Constitution, causing Plaintiff to suffer harm as aforesaid." ECF No. 1 at 5, 6, 8. Here, the Plaintiffs fail to allege any facts showing the training that City of Pawtucket police officers are proscribed, that the failure to train Mr. Dolan was a deliberate or conscious choice, or that the alleged constitutional violations were caused by the failure to train Mr. Dolan. They simply make "a formulaic recitation of the elements

11

of a cause of action," which cannot suffice. *Ashcroft,* 556 U.S. at 678. Therefore, the Plaintiffs have not adequately alleged any § 1983 liability against the Defendant, City of Pawtucket. Because the Plaintiffs cannot meet the initial threshold of a § 1983 claim, the Court need not go through the individual causes of action that Plaintiff's Complaint lays out. *See* ECF No. 1 at 5, 6, 8.[3]

### F. Rhode Island State Law Claims Against the Defendants

Counts III, IV, VII, IX, and X address claims arising under common law[4]. ECF No. *1* at 6-9, ¶¶ 26-27, 32, 35, 37. The Defendants maintain that such claims should be dismissed if the § 1983 claims are dismissed and advocates for this Court to decline to exercise supplemental jurisdiction. ECF No. 12 at 11, ¶ 3. However, because two of the § 1983 claims will survive Defendants' Motion to Dismiss, it would be impracticable for the Court to decline to exercise supplemental jurisdiction. As such,

---

[3] Counts II and VI allege claims arising under the Rhode Island Constitution art. I § VI. ECF No. 1 at 5, ¶ 24. The Rhode Island Supreme Court has consistently held that state constitutional provisions do not create a private cause of action without legislative action. *Kurland v. City of Providence by and through Lombardi*, 711 F. Supp. 3d 57, 76 (D.R.I. 2024) (*see, e.g., Folan v. State Dep't of Child., Youth, and Families*, 723 A.2d 287, 292 (R.I. 1999)). Plaintiffs' Memorandum in Support of their objection to the Motion to Dismiss properly withdraws these claims and proffers to remove the claims in an Amended Complaint. ECF No. 15 at 5, ¶ 2. Therefore, because such claims cannot properly be asserted under a state constitution, Counts II and VI should be dismissed and addressed instead through § 1983 and state common-law claims.

[4] Count III alleges battery; Count IV alleges assault; Count VII alleges false arrest/false imprisonment; Count IX alleges intentional infliction of emotional distress; Count X alleges negligent infliction of emotional distress.

the Court must review the allegations in the Complaint for the remaining counts[5] with respect to *Twombly*.

### G. Common-Law Claims for Battery

Count III of the Complaint alleges that Mr. Dolan "intended to cause and in fact caused a harmful and offensive touching of and trauma upon the Plaintiff Dominic Vincent's body without consent or privilege, thereby causing Plaintiff to sustain harm as aforesaid." ECF No. 1 at 6, ¶ 26. A battery is an act that was "intended to cause, and does cause, an offensive contact with or unconsented touching of or trauma upon the body of another, thereby generally resulting in the consummation of the assault." *Broadley v. State*, 939 A.2d 1016, 1021 (R.I. 2008) (quoting *Fenwick v. Oberman*, 847 A.2d 852, 855 (R.I. 2004)). In support of their claim, the Plaintiffs allege that Mr. Dolan shot his service revolver into the Plaintiffs' vehicle "striking Mr. Vincent in the left arm." ECF No. 1 at 4, ¶ 15. Taking the allegation that Mr. Dolan did in fact discharge his gun even without any "warning, provocation, or threat" as true, it is plausible that Mr. Dolan intended to cause and did in fact cause an offensive contact with Mr. Vincent. *See id*. Because the Plaintiffs have satisfied the elements, the Complaint has properly alleged a common-law claim for battery. Count III should not be dismissed.

### H. Common-Law Claims for Assault

---

[5] The remaining counts to assess under a Motion to Dismiss standard are: Counts III, IV, IX, and X.

Count IV of the Complaint alleges that "Mr. Dolan placed [the Plaintiffs] in reasonable fear of imminent bodily harm, and thereby committed assault upon Plaintiffs, thereby causing Plaintiffs to sustain harm as aforesaid." *Id.* ¶ 27. An assault is an "unlawful attempt or offer, with force or violence, to do a corporal hurt to another." *State v. Ashness*, 461 A.2d 659, 665 (R.I. 1983) (quoting *State v. Baker*, 20 R.I. 275, 277 (R.I. 1987)). In support of their claim, the Plaintiffs allege that Mr. Dolan "rushed from his vehicle and brandishing an unknown object yelled at the Plaintiff victims." ECF No. 1 at 3, ¶ 14. The Plaintiffs also allege that after Mr. Dolan fired the shot at Mr. Vincent (*id.* at 4, ¶ 15), they "fear[ed] for their lives." *Id.* ¶ 16. Taking the Plaintiffs' allegations as true, it is plausible that Mr. Dolan unlawfully attempted, with the force of his service revolver, to "do a corporal hurt" to the Plaintiffs. The use of a deadly weapon can be said to produce harm to another. Therefore, the Plaintiffs have plausibly alleged common-law claims for assault. Count IV should not be dismissed.

I. **Common-Law Claims for Intentional Infliction of Emotional Distress**

Count XI of the Complaint alleges that "Mr. Dolan caused severe emotional distress to [the Plaintiffs]" who, as a result "experienced physical symptoms including but not limited to gunshot wound, anxiety, post-traumatic stress, vomiting, headache and other physical manifestations." *Id.* at 8, ¶ 35. To prevail on a claim for intentional infliction of emotional distress, a claimant mut show that:

> (1) the conduct must be intentional or in reckless disregard of the probability of causing emotional distress, (2) the conduct must be *extreme and outrageous*, (3) there must be a causal connection

14

> between the wrongful conduct and the emotional distress, and (4) the emotional distress in question must be severe.

*Gross v. Pare*, 185 A.3d 1242, 1246 (R.I. 2018) (quoting *Swerdlick v. Koch*, 721 A.2d 849, 862 (R.I. 1998)). Liability has been found only where the conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Jalowy v. Friendly Home, Inc.*, 818 A.2d 698, 707 (R.I. 2003) (quoting *Swerdlick*, 721 A.2d at 863).

In support of their claim, the Plaintiffs allege that Mr. Dolan *deliberately* fired his service revolver at Mr. Vincent's left arm "without warning, provocation, or threat." ECF No. 1 at 4, ¶ 15. They also stress that after impaling Mr. Vincent, Mr. Dolan followed Plaintiff's vehicle down the street and "berate[d] the operator while offering no first aid, save a dirty sweatshirt thrown in [his] direction." *Id.* ¶ 17. Taking these allegations as true, it is plausible that Mr. Dolan's conduct was intended or was in reckless disregard of the possibility of causing emotional distress, evidenced also by the young ages of the Plaintiffs and the use of a deadly weapon. It is plausible that the conduct was extreme and outrageous, as firing a deadly weapon completely unprovoked goes "beyond all bounds of decency." *Jalowy*, 818 A.2d at 707. It is also plausible that Mr. Dolan's conduct was the cause of the Plaintiffs' emotional distress, as there do not appear to be any other intervening factors in the Complaint. Lastly, it is plausible that the emotional distress that the Plaintiffs endured was severe, evidenced by the gunshot wound and the onset of post-traumatic stress disorder.

Therefore, the Plaintiffs have alleged a claim for intentional infliction of emotional distress.  Count XI against Mr. Dolan should not be dismissed.

The Plaintiffs also allege that the City of Pawtucket, "through its hiring, training, supervision, and disciplinary regime caused the unconstitutional behavior by its individual police officers during their encounter with Plaintiff victims, which caused severe emotional distress to [the Plaintiffs]."  ECF No. 1 at 9, ¶ 36.  The Complaint alleges that "[a]s of June 23, 2021, Mr. Dolan had been [involved in] at least two prior instances of police misconduct [. . .]: [involving] excessive force [. . .] *Id.* at 4, ¶ 19.  The Complaint further alleges that "[a]t no time prior to June 23, 2021, was Mr. Dolan disciplined, suspended, or otherwise held accountable by the Defendant Pawtucket Police department or the City of Pawtucket."  *Id.* ¶ 20.  It is plausible that the failure of the city to discipline Mr. Dolan in the past was in reckless disregard of the probability of causing emotional distress.  It is also plausible that this failure was extreme or outrageous, and the emotional distress endured was severe.  However, the Plaintiffs have not plausibly alleged how the city's failure to act was causally connected to the emotional distress as they have failed to plead any factual material that would support this connection.  Therefore, the Plaintiffs have failed to allege intentional infliction of emotional distress against the City of Pawtucket.  Therefore, Count XI against the City of Pawtucket should be dismissed.

### J. Common-Law Claims for Negligent Infliction of Emotional Distress

Count X of the Complaint alleges that Mr. Dolan, by his negligent acts, "caused severe emotional distress to [the Plaintiffs], who, as a result, experienced physical

16

symptoms including but not limited to gunshot wound, anxiety, post-traumatic stress, vomiting, headache, and other physical manifestations." ECF No. 1 at 9, ¶ 37. Only two classes of persons may bring claims for negligent infliction of emotional distress: those within the zone-of-danger who are physically endangered by the acts of a negligent defendant, and bystanders related to a victim who they witness being injured. *Shannahan v. Moreau*, 202 A.3d 217, 229 (R.I. 2019) (citing *Pare*, 185 A.3d at 1246). A plaintiff is within the zone-of-danger if they sustain a physical impact or are "placed in immediate risk of physical harm" by a defendant's negligent conduct. *Sawyer Bros, Inc. v. Island Transporter, LLC*, 887 F.3d 23, 38 (1st Cir. 2018) (citing *Consol. Rail Corp. v. Gottshall*, 512 U.S. 532, 548 (1994)). Plaintiffs within the zone-of-danger must also, because of experiencing the accident, suffer "serious emotional injury that is accompanied by physical symptomatology." *Perrotti v. Gonicberg*, 877 A.2d 631, 637 (R.I. 2005) (citing *Marchetti v. Parsons*, 638 A.2d 1047, 1052 (R.I. 1994)).

In support of their claim, the Plaintiffs allege that Mr. Dolan "fired a shot from his service revolver into the vehicle compartment striking Mr. Vincent in the left arm." ECF No. 1 at 4, ¶ 15. The Plaintiffs were clearly within the zone-of-danger while inside the car before Mr. Dolan approached them with his revolver. Mr. Vincent sustained a physical gunshot wound, while the other Plaintiffs were placed in immediate risk of physical harm by Mr. Dolan's negligent conduct of discharging a deadly weapon. They too could have been punctured by the bullet. The Plaintiffs also allege that because of Mr. Dolan's negligent conduct, they have suffered anxiety,

17

post-traumatic stress, vomiting, and headache. ECF No. 1 at 9, ¶ 37. Taking the Plaintiffs' allegations as true, it is plausible that the Plaintiffs have suffered from negligent infliction of emotional distress. As a result, Count X should not be dismissed.

The Plaintiffs also allege that the City of Pawtucket, "through its negligent hiring, training, supervision, and disciplinary regime caused the unconstitutional behavior by its individual police officers during their encounter with Plaintiffs victims, which caused severe emotional distress to [the Plaintiffs]." *Id.* ¶ 38. The Complaint offers the same allegations that support the claim for intentional infliction of emotional distress as support for this claim–that the City of Pawtucket never disciplined Mr. Dolan. *See id.* at 4, ¶ 20. The Plaintiffs were placed in immediate risk of physical harm when they were seated in the vehicle that a bullet struck. *Id.* ¶ 15. It is plausible that the Plaintiffs were faced with this risk of harm because of the City of Pawtucket's negligence in failing to discipline Mr. Dolan and, presumably prevent him from engaging in such conduct again. Therefore, the Plaintiffs have alleged a claim of negligent infliction of emotional distress against the City of Pawtucket. Count X against the City of Pawtucket should not be dismissed.

## IV. CONCLUSION

For these reasons, the Court DENIES Defendants' Motion to Dismiss Counts I, III, IV, V, VII, and X, and GRANTS Defendants' Motion to Dismiss Count II, VI, VIII. The Court DENIES Defendants' Motion to Dismiss as to the Plaintiffs' Count

18

IX against Mr. Dolan, and GRANTS Defendants' Motion to Dismiss Count IX against the City of Pawtucket. The Court GRANTS the Plaintiffs' Motion to Amend its Complaint.[6]

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief Judge
United States District Court

October 31, 2024

---

[6] Considering this Court's denial of Defendants' Motion to Dismiss Counts I, III, IV, V, VII, and X, any new allegations in the Plaintiffs' Amended Complaint do not alter this Court's decision.